**OLSHAN FROME WOLOSKY LLP**
1325 Avenue of the Americas
New York, New York 10019
Michael S. Fox, Esq.
Jonathan T. Koevary, Esq.
212.451.2277

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| East Coast TVs Inc, et al., | Case No. 18-40765 (ESS) |
| Debtors.[1] | (Jointly Administered) |
| EAST COAST TVS INC. and GARDEN STATE INSTALLATIONS II, INC., | Adv. Pro. No. 18- |
| Plaintiffs, | **COMPLAINT FOR PERMANENT INJUNCTION AND DECLARATORY RELIEF**) |
| -against- | |
| MERRICK BANK CORPORATION | |
| Defendant. | |

East Coast TVS Inc. and its affiliated debtor-in-possession (collectively, "Debtors"), by and through their undersigned attorneys for their Complaint seeking a permanent injunction and declaratory relief against Defendant Merrick Bank Corporation ("Merrick Bank"), allege as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: East Coast TVs Inc (0300) and Garden State Installations II, Inc (4391).

## <u>NATURE OF THE ACTION</u>

1.      This adversary proceeding seeks injunctive and declaratory relief requiring the Debtors' exclusive merchant bank processor, Merrick Bank, to refrain from terminating and to perform under certain executory contracts in which it agreed to process the credit-card purchases of the Debtors' sales.   Either termination or continued non-performance by Merrick Bank will eviscerate a critical component of the Debtors' operations as the relevant agreement is, responsible for 100% of the Debtors' revenue.   Without that revenue stream, any prospect of a successful restructuring will be placed in jeopardy, and creditor recoveries will be impaired.   This Court was made aware by both Priority Payment Services ("PPS")  and Card Processing Systems that it is the responsibility of Merrick Bank to process or not any post-petition sales.

2.      The Debtors are currently party to a series of credit card Processing Services Agreements (the "Processing Agreements") with PPS and Merrick Bank.  What has occurred post-petition is alarming.  Post-petition both PPS and Merrick Bank have failed to honor the Processing Agreements without any notice whatsoever of termination.

3.      During the course of a hearing held before this Court on February 28, 2018 it was conceded by Counsel for PPS that no such termination notice was ever sent to the Debtors. The Debtors' continued rights under the Processing Agreements are a substantial asset of the respective estates, and any termination or non-performance of those rights is barred by the automatic stay that came into effect upon the commencement of the Debtors' bankruptcy cases (February 9, 2018). Moreover, assuming that Merrick Bank would rely on *ipso facto* clauses in the agreements cannot provide a basis for termination under section 365(e)(1) of the Bankruptcy Code.

3.      Accordingly, the Debtors bring this adversary proceeding for equitable relief to further prevent Merrick Bank from improperly terminating or not performing under the Processing Agreements. Specifically, the Debtors seek the following relief against Merrick Bank:

2

(a) a declaration that termination of the Processing Agreements violates the automatic stay under section 362(a)(3) of the Bankruptcy Code by exercising control over property of the estates, including control over the Debtors' rights to continued performance under the Processing Agreements; (b) a declaration that because the Processing Agreements are executory contracts, any provisions in those agreements that purport to terminate them based on the Debtors' financial condition are unenforceable pursuant to section 365(e)(1) of the Bankruptcy Code; and (c) a permanent injunction enjoining Merrick Bank from terminating the Processing Agreements or otherwise failing to honor its obligations under those agreements unless and until the Debtors assumes or rejects them in accordance with section 365(d) of the Bankruptcy Code.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  Debtors make this application pursuant to sections 105(a), 362, 365, and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 2201.

5.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (O).  Venue of this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

6.      Plaintiff  is a New Jersey corporation with its principal place of business in Linden, New Jersey.

7.      Upon information and belief, Defendant is a Utah corporation with an address at 135 Corssway Park Drive North, Suite A100, Woodbury, NY 11797.

## SUBSTANTIVE ALLEGATIONS

**A.      Background of the Debtors' Operations**

3

8.    On February 9, 2018 (the "Petition Date") the Debtors filed the bankruptcy cases in the United States Bankruptcy Court for the Eastern District of New York.

9.    The Debtors are online retailers of electronics, primarily televisions and related accessories.

**B.    Credit Card Processing Services Are An Essential Component Of the Debtors Operations**

10.    The Debtors' sole source of revenue— historically between approximately $1 to $2 million per month—consists of the charges they collect from sales to consumer who pay for the Debtors' products with VISA/MasterCard credit cards.  Like most providers of goods, the Debtors are not qualified to submit credit-card payment receipts directly to the VISA or MasterCard networks; rather, it depends on an authorized credit card processor—in this case, PPS—to consummate those transactions.   Upon information and belief, Merrick Bank, through PPS, processes approximately 100% of the Debtors credit-card transactions.

11.    In the typical transaction, the Debtors transmit a digital sales record of the customer's card payment to PPS/Merrick Bank, which relays the information to the Visa or MasterCard network.  The network dispatches the transaction to the customer's issuing bank (*i.e.*, the bank that issued the card to the customer), which advances funds from the customer's line of credit, and remits the funds back to the network.  The network makes a wire transfer to Merrick Bank and PPS of the dollar amount of the transaction, less a fee that PPS owes the issuing bank related to the transaction, to the Debtors.  Finally, Merrick Bank transfers the balance of the funds (net of any fees the Debtors owe Merrick Bank/PPS related to the transaction and/or charge-backs) to the Debtors' bank account.[2]  The relationship among the Debtors, PPS, Merrick Bank, the Visa and MasterCard networks, and the customer and its issuing bank appears below:

---

[2] Each of the intermediaries between the credit-card-paying customer and the Debtor—i.e., the bank that issued the customer's credit card, the VISA or MasterCard network, and the credit card processor (Merrick Bank)—collect fees on every transaction.  These fees are deducted from the customer's payment and the net proceeds are remitted to Debtor.



12.    Credit card processing is a critical component of the Debtors' business. Without it, the Debtors would be and are now unable to consummate credit card transactions and would be deprived of its primary source of revenue.

### C.    The Debtors' Processing Services Agreements

13.    To ensure their ability to collect credit card payments from their customers, the Debtors entered into the Processing Agreements with PPS and Merrick Bank, who has served as the Debtors' exclusive credit card processor.

### 1.    The Processing Agreements' Termination Provisions

14.    The Processing Agreements include clauses that purport to permit termination or materially modify the agreements upon certain events.

15.    Section 24 of the Processing Agreement addresses the Term and lists certain Events of Default.

16.    Termination is <u>not</u> automatic under any of the agreements and instead requires significant steps to consummate, including the transmission of a written notice of termination as well as physically removing the Debtors from the PPS/Merrick Bank processing

5

system, processing all outstanding credit card transactions and charge-backs, remitting net proceeds due the Debtors, agreeing on an acceptable Reserve Account, discontinuing the maintenance of the Debtors' information, and returning certain proprietary data (*e.g.*, customer lists) and other materials Merrick Bank would likely have to administer any agreed-upon reserve account for anywhere from six months to more than a year after any purported termination date as charge-backs, cancellations, and credits make their way through the system.

### 2. The Processing Agreements Mitigate Default Risk By Permitting Merrick Bank To Establish A Reserve Account

17. The Processing Agreements authorize PPS/Merrick Bank to establish an internal reserve account (the "Reserve Account") in the event it determines there has been a materially adverse change in the financial condition and to secure Merrick Bank in the event it is required to make payments or incur liabilities on the Debtors' behalf, *e.g.*, in the event that "charge-backs"[3] for a given period exceed the Debtors' net proceeds for the period. Merrick Bank may fund the Reserve Account by withholding a portion of the proceeds due to the Debtors from member credit card payments.

18. Merrick Bank has previously requested that the Debtors maintain at least $100,000 in the Reserve Account at all times—a requirement with which the Debtors have complied. As of the Petition Date, the Reserve Account remain at approximately $100,000.

### D. The Processing Agreements Are Unexpired Executory Contracts

19. As of the Petition Date, the Processing Agreements, and the parties' respective obligations thereunder, remain in full force and effect.

20. The Processing Agreements do not terminate automatically. In addition to

---

[3] A charge-back is a reversal of a sale transaction, such as a return or a refund. In the event of a charge-back, Merrick Bank distributes proceeds in the amount of the refund to the issuing bank, which then credits the amount of the refund to the customer's account. Typically, charge-backs are simply deducted by Merrick Bank from net proceeds.

4528808-3

written notice of default, there are significant, additional steps required to effect termination, including physically removing the Debtors from Merrick Bank's processing system, processing all outstanding credit card transactions and charge-backs, remitting net proceeds due the Debtors, agreeing on acceptable Reserve Account, discontinuing the maintenance of the Debtors' information, and returning certain data and materials.   The process of administering any agreed-upon escrow as charge-backs, cancellations and credits run through the system will likely last between six months to more than a year.

21.   Even after termination is effectuated, the parties have continuing rights and obligations under the Processing Agreements, including rights to indemnification and confidentiality and record-retention obligations.

**E.    Termination Of The Processing Agreements Threatens
The Debtors' Successful Restructuring**

22.   If the actions of Merrick Bank would remain and this Court accepted the notion that the Processing Agreements were terminated, or worse this Court accepted the non-performance post-petition, the impact on restructuring would be severe and the precedent it would set for others would be frightening.   The credit card processing arrangement with Merrick Bank is a critical component of the operations; its termination threatens the ability to restructure and will negatively impact creditor recoveries in these chapter 11 cases.

*      *      *      *      *

**COUNT I**

**FOR A DECLARATION THAT THE PROCESSING AGREEMENTS ARE
EXECUTORY CONTRACTS AND THAT ANY ATTEMPT TO TERMINATE THE
AGREEMENTS BASED ON THE DEBTORS' FINANCIAL CONDITION IS
<u>UNENFORCEABLE UNDER SECTION 365(E)(1) OF THE BANKRUPTCY CODE</u>**

23.   The Debtors repeat and re-allege the allegations contained in paragraphs 1 through 22 as if set forth fully herein.

24.   Section 365(e)(1) of the Bankruptcy Code provides that "[n]otwithstanding

7

a provision in an executory contract ..., or in applicable law, an executory contract ... of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on ... the insolvency or financial condition of the debtor at any time before the closing of the case[.]"

25.    The automatic stay applies to the Processing Agreements and the Debtors' rights thereunder and prohibits Merrick Bank from terminating them or simply refusing to perform on them.

26.    The Processing Agreements are unexpired executory contracts.

27.    Neither Merrick Bank nor PPS are permitted to terminate or modify the Processing Agreements on the basis of the Debtors' financial condition pursuant to the *ipso facto* clauses in the Agreements.  No notice of termination was ever sent to the Debtors.

28.    Accordingly, the Court should declare that the Processing Agreements are executory contracts within the meaning of Sections 365(e)(1) of the Bankruptcy Code, and that the Agreements therefore may not be terminated or modified by Merrick Bank on the basis of the Debtors' financial condition or unaudited claims involving chargebacks.

## COUNT II

### FOR DECLARATION THAT TERMINATION OF THE PROCESSING AGREEMENTS WOULD VIOLATE THE AUTOMATIC STAY UNDER SECTION 362(A)(3)

29.    The Debtors repeat and re-allege each and every allegation contained in paragraphs 1 through 28, as if set forth fully herein.

30.    The Bankruptcy Code automatically stays any action to obtain possession or exercise control over assets of the estate.  *See* 11 U.S.C. § 362(a)(3).

31.    Similarly, section 541(c)(1) of the Bankruptcy Code provides that property of a debtor becomes property of the estate, "notwithstanding any provision in [an] agreement ... (B)

8

that is conditioned on the insolvency or financial condition of the debtor ... and that effects ... a forfeiture, modification, or termination of the Debtors' interest in property." *See* 11 U.S.C. § 541(c)(1).

32.    The Debtors' rights under the Processing Agreements requiring Merrick Bank to continue to process its sales  are property of the estate and substantial assets.

33.    Any attempt by Merrick Bank to terminate or otherwise interfere with the Debtors' rights under the Processing Agreements is subject to the automatic stay.  Termination of the Processing Agreements by Merrick Bank would violate the automatic stay.

**COUNT III**

**FOR A PERMANENT INJUNCTION ENJOINING MERRICK BANK FROM TERMINATING THE PROCESSING AGREEMENTS**

34.    The Debtors repeat and re-allege each and every allegation contained in paragraphs 1 through 33, as if set forth fully herein.

35.    Because any effort by Merrick Bank to terminate the Processing Agreements, either on the basis of the Debtors' financial condition or otherwise, would violate Sections 365(e)(1) and 362(a)(3) of the Bankruptcy Code, Merrick Bank should be permanently enjoined from terminating the Processing Agreements or otherwise failing to honor its obligations under the Processing Agreements unless and until the Debtors assume or reject the Agreements pursuant to section 365(d) of the Bankruptcy Code.

**REQUEST FOR RELIEF**

36.    For the foregoing reasons, the Debtors requests that the Court enter an order

(a)    declaring that because the Processing Agreements are executory contracts, any provisions in those agreements that purport to terminate them based on the Debtors' financial condition are unenforceable under section 365(e)(1) of the Bankruptcy Code;

(b)    declaring that termination or continued non-performance under the Processing Agreements by Merrick Bank would violate the automatic stay under section 362(a)(3) of the Bankruptcy Code by exercising control

9

over property of the estates;

(c)     permanently enjoining Merrick Bank from terminating the Processing Agreements or otherwise failing to honor its obligations under those agreements until they are assumed or rejected in accordance with section 365(d) of the Bankruptcy Code; and

(d)     awarding such other relief as the Court deems proper.

Dated: New York, New York
       March 1, 2018

**OLSHAN FROME WOLOSKY LLP**

By:   /s/ Michael S. Fox
      Michael S. Fox
      Jonathan T. Koevary
      1325 Avenue of the Americas
      New York, New York 10019
      (212) 451-2300

      *Proposed Counsel to the Debtor*

10